**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**NEW ALBANY DIVISION**

| | | |
|---|---|---|
| BRENDA  GREENWELL and | ) | |
| RON  GREENWELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:11-cv-00013-TWP-DML |
| | ) | |
| CITY OF JEFFERSONVILLE, INDIANA, | ) | |
| and OFFICER JOSEPH  HUBBARD, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants', the City of Jeffersonville, Indiana ("the City") and Officer Joseph Hubbard ("Officer Hubbard") of the Jeffersonville Police Department's, Motion for Summary Judgment (Dkt. 34).  Plaintiffs Brenda ("Mrs. Greenwell") and Ron Greenwell ("Mr. Greenwell") (collectively, "the Greenwells") allege the City and Officer Hubbard violated their constitutional rights under 42 U.S.C. § 1983, and they raise various state law claims.  Specifically, the Greenwells argue the warrantless entry into their house and seizure of Mrs. Greenwell by Officer Hubbard and others violated their Fourth Amendment rights.  Additionally, the Greenwells argue the conduct of Officer Hubbard and others rose to the level of false imprisonment, assault, battery, trespass, negligent infliction of emotional distress, and intentional infliction of emotional distress under state law.  For the reasons below, the Court **GRANTS in part** and **DENIES in part** Defendants' Motion (Dkt. 34).

## I.  BACKGROUND

On February 19, 2009, two Jeffersonville police officers were ambushed and shot at a motel in Clark County.  The assailants fled the scene of the shooting and were at-large and

considered armed and dangerous.  A multi-department effort to find the assailants was launched, and Officer Hubbard was called to join a SWAT detail that was going to search for the assailants. Eventually the Indiana State Police took control of the effort and Officer Hubbard's SWAT detail was deactivated.  Officer Hubbard then joined a Clark County Special Operations Unit ("SOU") as a liaison.  Acting on information that the assailants had ties to an address on Hamburg Pike in Clark County, the SOU team, accompanied by Officer Hubbard, reported to the Greenwell home.  Officer Hubbard was assigned to knock on the front door to make contact with the occupants.  When no one answered, the SOU discovered and entered the residence through an unlocked back door.  The team conducted a sweep of the home and pronounced it all clear. After the team exited the home, they told Officer Hubbard the only occupant inside the residence was a woman who was sleeping in the back room.  After learning the woman was inside, Officer Hubbard entered the home to wake her and inform her of the sweep that had just occurred.  He was accompanied by two members of the SOU team.  As he walked through the home, Officer Hubbard turned on lights.  When he entered the bedroom, he turned on the light and yelled "police" several times, and "Ma'am, I need you to get up.  Police." Dkt. 35-1 at 8–9, 29:8–30:1.

According to Mrs. Greenwell, on the night of February 19, 2009 she was startled awake by masked men yelling at her with weapons drawn and pointed in her direction.  Mrs. Greenwell sleeps with a CPAP machine[1]. She asked the men who they were and demanded identification. When the men did not comply with her request, she threw off her CPAP mask in order to distract them and reached behind the headboard for her pistol and pointed it at the men.  When Officer Hubbard saw the gun, he yelled at the SOU officers to run, and all three officers ran out of the residence. Mrs. Greenwell exited her house and stepped onto her back porch, where a group of

---

[1] Throughout her deposition, Mrs. Greenwell referred to sleeping with a CPACK mask, however a CPAP mask is used with a Continuous Positive Airway Pressure (CPAP) machine.

police officers had weapons pointed at her.[2]  Mrs. Greenwell still did not realize the men were police officers and continued to demand identification.  She refused to put her gun down. Officer Hubbard called for a uniformed officer to come to the scene so that Mrs. Greenwell could recognize that they were law enforcement officers, and when that officer arrived, Officer Hubbard left the backyard.

Mr. Greenwell was in the house next door visiting his brother on the night of February 19, 2009.  Upon hearing the commotion in his backyard, he exited his brother's house and attempted to reach his wife.  The police tried to stop Mr. Greenwell and used their rifles to push him back.  Mr. Greenwell informed the officers that the woman with a gun was his wife, and that he needed to stop her.  Mr. Greenwell pushed his way to the porch where Mrs. Greenwell was still pointing her gun.  He told her the men were police officers and that she needed to "[l]ower the gun; go in the house; lay it on the deep freeze and sit down."  Dkt. 35-4 at 8, 31:13–15.  Mrs. Greenwell went back into her home, placed her handgun down and sat at her kitchen table.  At this time, she began feeling stress in her arm and neck.  Mr. Greenwell, still outside, addressed the SOU and asked for the officer in charge and no more than three or four accompanying officers to join him inside the house. Once all were inside, an officer noticed Mrs. Greenwell was in some distress and he took Mrs. Greenwell's pulse.  Eventually, Mrs. Greenwell was taken to the hospital where she suffered a cardiac arrest and received by-pass surgery.

In an Order on March 27, 2012, the Court granted the parties' partial stipulation of dismissal of federal and state claims against the Jeffersonville Police Department and Jeffersonville Police Chief, Tim Deeringer.  The claims which remain include: 1) the constitutional claims pursuant to 42 U.S.C. § 1983 against Officer Hubbard in his official

---

[2] Officer Hubbard testified there were around ten officers and SWAT members in the back yard.  Mrs. Greenwell testified there were fifty men.  The exact number is not a material fact.

capacity and the City of Jeffersonville asserted in Counts One and Two of the Greenwells'
Complaint; and 2) the claim against the City of Jeffersonville for any and all State law tort
claims asserted in Count Five of the Greenwells' Complaint, including assault, battery, trespass,
wrongful arrest, false imprisonment, negligent infliction of emotional distress, and intentional
infliction of emotional distress.

## II. <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the
pleadings, depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any material fact and that the moving
party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d
487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary judgment, the court reviews
"the record in the light most favorable to the nonmoving party and draw[s] all reasonable
inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation
omitted).  However, "[a] party who bears the burden of proof on a particular issue may not rest
on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is
a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation
omitted).  "In much the same way that a court is not required to scour the record in search of
evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on
the merits of a claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citation and
internal quotations omitted).  Finally, "neither the mere existence of some alleged factual dispute
between the parties nor the existence of some metaphysical doubt as to the material facts is
sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Group, Inc.*,
129 F.3d 391, 395 (7th Cir. 1997) (citations and internal quotations omitted).

## III.  DISCUSSION

**A.     Federal Claims and *Monell* Liability**

As noted above, the remaining federal claims are against Officer Hubbard in his official capacity and against the City of Jeffersonville.  "An official capacity suit is tantamount to a claim against the government entity itself."  *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007).  Therefore, the Greenwells' federal claims must be analyzed under the theory of municipal liability explained in *Monell v. New York City Department of Social Services*, 436 U.S. 659 (1978).[3]  A municipality can be held liable only when a constitutional violation is caused by municipality policy or custom.  *Jenkins v. Bartlett*, 487 F.3d 482, 492 (7th Cir. 2007) (citing *Monell*, 436 U.S. at 694).  The Seventh Circuit has identified three situations in which municipal policy violates the civil rights of an individual:

> (1) an express policy that, when enforced, causes a constitutional deprivation, (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Guzman*, 495 F.3d at 859.

Defendants contend the Greenwells' federal claims must fail because first, there were no constitutional violations, and second, the City did not have a policy or custom authorizing unconstitutional conduct.  Although the Greenwells dispute that Officer Hubbard committed constitutional violations, they concede that "this claim may be ripe for summary judgment." Dkt. 41 at 11.

The Greenwells allege three constitutional violations.  First, Mrs. Greenwell alleges Officer Hubbard committed an unconstitutional entry into her home, thus violating her Fourth

---

[3] As previously stated, the claims against Officer Hubbard in his individual capacity were dismissed with prejudice by stipulation.

Amendment rights.   Second, Mrs. Greenwell alleges she was unreasonably seized in her bedroom by Officer Hubbard, thus violating her Fourth Amendment rights.   Third, Mr. Greenwell alleges he was unreasonably seized when he attempted to reach his wife, but was pushed back by several police officers.

### 1.      Fourth Amendment Violations

Warrantless entries and searches of a residence are "presumptively unreasonable" under the Fourth Amendment.   *See, e.g.*, *Groh v. Ramirez*, 540 U.S. 551, 559 (2004); *Payton v. New York*, 445 U.S. 573, 586 (1980); *Green v. Butler*, 420 F.3d 689, 694 n. 4 (7th Cir. 2005).   Yet several exceptions have been established.   Relevant to this case, "the exigent circumstances doctrine recognizes that there may be situations in which law enforcement officials may be presented with 'a compelling need' to conduct a search, but have 'no time to secure a warrant.'" *Bogan v. City of Chi.*, 644 F.3d 563, 571 (7th Cir. 2011) (quoting *United States v. Dowell,* 724 F.2d 599, 602 (7th Cir. 1984)).   The doctrine is applied to situations that pose a danger to the officers or to others.   *Id.*   "[A] police officer's subjective belief that exigent circumstances exist is insufficient" to justify a warrantless search.   *United States v. Richardson*, 208 F.3d 626, 629 (7th Cir. 2000).   Instead, "[w]hen reviewing a warrantless search to determine if exigent circumstances existed, this Court conducts an objective review" that asks whether "a reasonable officer had a 'reasonable belief that there was a compelling need to act and no time to obtain a warrant.'"   *Bogan*, 644 F.3d at 571 (quoting *United States v. Andrews,* 442 F.3d 996, 1000 (7th Cir. 2006)).   The Court makes its determination "on the totality of facts and circumstances 'as they would have appeared to a reasonable person *in the position of the . . . officer*—seeing what he saw, hearing what he heard."   *Id.* at 571–72 (quoting *Mahoney v. Kesery,* 976 F.2d 1054, 1057 (7th Cir. 1992)).

A seizure violates the Fourth Amendment when it is unreasonable.  The first step in determining whether there has been a constitutional violation is whether a seizure actually occurred, and then the court turns to reasonableness.  *Carlson v. Bukovic*, 621 F.3d 610, 618 (7th Cir. 2010).  "The seizure and reasonableness inquiries are distinct and should not be conflated." *Id.*  Regarding the seizure inquiry, "the traditional approach is whether the person believed he was 'free to leave[,]'" which is an objective determination made on the totality of the circumstances.  *Id.*  Physical contact, the number and threatening presence of officers, the display of a weapon, the police officers' language and tone of voice suggesting compulsion, and the coercive effect of the encounter are factors the court considers.  *Id.* at 619–20.  The reasonableness inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'"  *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519 (7th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "This constitutional inquiry is objective and does not take into account the motives or intent of the individual officers."  *Id.* at 520.

### a.    The Entry into the Greenwells' Home

Defendants contend the SOU team's entry into the Greenwells' home and Officer Hubbard's entry immediately after were all part of one entry into the home that was justified by exigent circumstances.  The Greenwells argue that Officer Hubbard's entry was a separate entry that cannot be justified by any exigent circumstances.  They further argue that the SOU team lacked probable cause or exigent circumstances to enter the home; therefore, even if there was only one warrantless entry, it was not justified.

The Court agrees with the Greenwells that there were two entries:  first, the SOU team entered the home to do a sweep and then cleared the home; second, after the home was cleared,

Officer Hubbard entered the home to inform Mrs. Greenwell of the SOU's sweep.   Officer Hubbard's decision to enter the home was not connected to the purpose of the SOU's entry, and despite the close proximity in time, the two entries were distinct.  The Court further finds that the SOU's entry was justified by exigent circumstances.   Two police officers had been ambushed and shot.   The suspects were at-large and considered armed and dangerous.   The SOU team had information that connected the Greenwells' home to the suspects.   Given the danger posed to police officers and the public at large, the Court finds the SOU team had a reasonable belief that there was a compelling need to act and no time to obtain a warrant before conducting a sweep of the Greenwells' home.

However, once the home was cleared the exigency ended.   By his admission, Officer Hubbard entered Mrs. Greenwell's home, not for any compelling need to act, but for the well-intentioned reason of informing her that an SOU team had been through the home.   Despite his good intentions and taking the facts most favorable to Mrs. Greenwell, Officer Hubbard had no legally justifiable reason to enter the Greenwells' home, and doing so was unreasonable.  Therefore, there was a constitutional violation satisfying the first prong of *Monell*.

### b.      The Seizure of Mr. and Mrs. Greenwell

Defendants contend that neither Mr. nor Mrs. Greenwell was seized by Officer Hubbard or City of Jeffersonville police officers.   Specifically regarding Mr. Greenwell, Defendants argue the Greenwells cannot identify which officers touched or used force on Mr. Greenwell, and there exists "no evidence" that Office Hubbard "rudely or insolently touched [Mr.] Greenwell."   Dkt. 36 at 21.  The Greenwells respond that the seizure of Mr. Greenwell was "a joint effort of all law enforcement officers present after Mrs. Greenwell exited her home precipitated by [Officer] Hubbard's violation of the Fourth Amendment."   Dkt. 41 at 11.   The Court agrees with

Defendants, and the Greenwells have put forth no material evidence creating a genuine issue of material fact that either Officer Hubbard or a City of Jeffersonville police officer seized Mr. Greenwell.  Several law enforcement agencies responded to the shootings on February 19, 2009, and the Jeffersonville SWAT Team had been deactivated.  The SOU team that went to the Greenwells' home was from the Clark County Sheriff's Department.  Therefore, notwithstanding whether a seizure actually occurred,[4] the Greenwells have not established a genuine issue of material fact that Mr. Greenwell was unreasonably seized by a City of Jeffersonville police officer in violation of the Fourth Amendment.  Mr. Greenwell's claim under 42 U.S.C. § 1983 fails under *Monell*.

Regarding Mrs. Greenwell's claim for unreasonable seizure, the Greenwells argue she was seized in her bedroom when Officer Hubbard and two unknown officers pointed weapons at her.  Specifically, they argue her liberty and freedom of meaningful movement was restricted and she did not feel free to leave until she pulled her own gun for defense.  Defendants argue Mrs. Greenwell did not allow herself to be seized, because from the moment Officer Hubbard and the other officers entered her bedroom she did not yield to the officers.  Taking the facts most favorable to Mrs. Greenwell and considering the factors of physical contact, the number and threatening presence of officers, the display of a weapon, the police officers' language and tone of voice suggesting compulsion, and the coercive effect of the encounter, the Court finds there is a genuine issue of material fact whether Mrs. Greenwell was seized.

The Court must also determine whether any seizure of Mrs. Greenwell was reasonable.  For the same reasons outlined above regarding the unreasonableness of Officer Hubbard's entry into the Greenwells' home, the Court also finds that any seizure of Mrs. Greenwell, if one

---

[4] Even reading the facts in the light most favorable to Mr. Greenwell, his actions on February 19, 2009 do not indicate that his movement was in any way restrained by a City of Jeffersonville police officer.

occurred, was unreasonable.  The officers had no justified reason to be in the Greenwells' home, therefore, there was no justified reason to seize Mrs. Greenwell, no matter how briefly.

### 2.    Municipal Liability

Having found that an unconstitutional entry occurred and a genuine issue of material fact exists as to whether an unconstitutional seizure occurred, the Court must determine if the City can be held liable for the actions of Officer Hubbard.  The Greenwells have not alleged any Jeffersonville policy, procedure, widespread custom, or deficiency in training that would establish municipal liability in this case.  In fact, the Greenwells do not meaningfully contest Defendants' Motion on this issue.  The Court finds that Defendants have established an absence of a genuine issue of material fact that the City did not have a policy, procedure, widespread custom, or deficiency in training to unlawfully enter a person's home or to seize a person in violation of the Fourth Amendment.

However, neither Defendants nor the Greenwells address the third prong of potential *Monell* liability, which is whether the constitutional injury was caused by a person with final policymaking authority.  The evidence in the record is that Officer Hubbard was a Jeffersonville SWAT sniper team leader, but was not a team commander or assistant commander.  On the night of February 19, 2009, he was assigned to a Clark County SOU team as a local police liaison.  There is no evidence that suggests Officer Hubbard had any policy-making authority for the City.  Therefore, there can be no municipal liability under this theory.

In summary, the Court finds the Greenwells cannot establish that either Officer Hubbard in his official capacity or the City is liable for the constitutional violations that took place on February 19, 2009.  Defendants' Motion for Summary Judgment as to the federal claims is granted.

**B.** **State Law Claims**

    **1.** **False Imprisonment**

The Greenwells allege that Mrs. Greenwell was falsely imprisoned by City of Jeffersonville police officers, including Officer Hubbard, in her bedroom.  Under Indiana law, the tort of false imprisonment is defined as the "unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent."  *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003).  As the Court discussed above, there is a genuine issue of material fact whether Mrs. Greenwell was restrained in her bedroom by the police officers.  Taking the facts most favorable to Mrs. Greenwell, Officer Hubbard and two police officers entered her home unlawfully, awakened Mrs. Greenwell by shouting and turning on lights, and pointed guns at Mrs. Greenwell in her bedroom.  The Court cannot find as a matter of law that the tort of false imprisonment did not occur.  Therefore, Defendants' Motion for Summary Judgment on this claim is denied.

    **2.** **Trespass and Emotional Distress-Indiana Tort Claims Act Immunity**

In Indiana, "Governmental entities, such as cities, are subject to liability for the torts committed by their employees unless one of the exceptions in the [Indiana Tort Claims] Act applies."  *Mullin v. Mun. City of South Bend*, 639 N.E.2d 278, 281 (Ind. 1994), *limited on other grounds*, *Benton v. City of Oakland City*, 639 N.E.2d 278 (Ind. 1994).  One exception in the Indiana Tort Claims Act ("ITCA") immunizes governmental entities from suit when an employee acting in the scope of his employment commits a tort while enforcing a law, "unless the act of enforcement constitutes false arrest or false imprisonment."  Ind. Code § 34-13-3-3(8).  "[T]he scope of 'enforcement' is limited to those activities in which a governmental entity or its

11

employees compel or attempt to compel the obedience of another to laws, rules or regulations, or sanction or attempt to sanction a violation thereof."  *Id.* at 283.

Defendants contend that "[b]y attempting to compel suspects to submit to police force and effectuate an arrest" when Officer Hubbard and other officers went to and entered the Greenwells' home, the officers were engaging in law enforcement.  Dkt. 36 at 31.  Defendants further argue that there is no question Officer Hubbard was acting within the scope of his employment, because even intentional, wanton or willful, and acts in violation of existing policy do not remove actions from a law enforcement officer's scope of employment.  *See City of Anderson v. Weatherford*, 714 N.E.2d 181, 185 (Ind. Ct. App. 1999).  Acts must be "so incompatible with the performance of [ ] employment" to be deemed outside the scope of employment under Indiana Code section 34-13-3-3(8).  *Id.*

The Greenwells contend that Officer Hubbard was not engaging in law enforcement when he entered the Greenwell home, because his warrantless entry abandoned law enforcement purposes.  As for Officer Hubbard's scope of employment, they offer only the conclusion that Officer "Hubbard's actions in no way furthered his employment purposes."  Dkt. 41 at 13–14.  The Court finds that the Greenwells have not put forth a genuine issue of material fact that either Officer Hubbard acted outside the scope of his employment or was not engaging in law enforcement.  The evidence provides that Officer Hubbard, even if erroneously, entered the Greenwells' home as part of his law enforcement duties with the intent to engage in law enforcement.  His actions are not so incompatible with his employment to deprive the City of the protections in Indiana Code section 34-13-3-3(8).  Therefore, Defendants' Motion for Summary Judgment on the trespass and emotional distress claims is granted.

### 3.      Assault and Battery

The Greenwells allege Defendants committed assault against Mrs. Greenwell when the officers pointed a weapon at her in her bedroom.  They further allege a battery was committed against both Mrs. Greenwell and Mr. Greenwell.  A person commits the tort of battery when "(a) he acts intending to cause a harmful or offensive contact with the person or of the other or third person, or an imminent apprehension of such contact, and (b) a harmful contact with the person of the other directly or indirectly results." *Lessley v. City of Madison*, 654 F. Supp. 2d 877, 914 (S.D. Ind. 2009).  An assault occurs "when one acts intending to cause a harmful or offensive contact with the person of the other or an imminent apprehension of such contact." *Cullison v. Medley*, 570 N.E.2d 27, 30 (Ind. 1991) (quoting Restatement (Second) of Torts § 21 (1)(a) (1965)).

Defendants contend that Mrs. Greenwell cannot assert a battery claim, as there is no allegation an officer touched her in her bedroom.  The Greenwells respond, without citation to facts, that "Mrs. Greenwell had been traumatized when a Jeffersonville Officer touched her without consent, and that is a battery that occurred in her bedroom." Dkt. 41 at 15.  Because the Greenwells fail to point the Court to evidence that supports this claim, Defendants' Motion to Dismiss Mrs. Greenwell's claim for battery is granted.

Defendants also contend that Mrs. Greenwell cannot assert an assault claim, because she cannot affirmatively state that the officers in her bedroom were City of Jeffersonville officers.  Yet Officer Hubbard admits that he was in her bedroom.  And, accepting the evidence in the light most favorable to Mrs. Greenwell, the Court finds a genuine dispute exists that an assault occurred. The facts alleged by Mrs. Greenwell; the officers' warrantless entry into the Greenwells' home and bedroom with firearms drawn, and weapons pointed at her serves no

13

legitimate law enforcement purpose and is sufficient to support the allegation that a Jeffersonville officer had intent "to cause a harmful or offensive contact" or the "immediate apprehension of such contact."  "Any act of such a nature as to excite an apprehension of a battery may constitute an assault.  It is an assault to shake a fist under another's nose, to aim or strike at him with a weapon, or to hold a threatening position, or rise or advance to strike another, to surround him with a display of force…". *Cullison v. Medley*, 570 N.E.2d 27, 31 (Ind. 1991). Therefore, the Court finds adequate proof exists to support the tort of assault and Defendants' Motion for Summary Judgment on Mrs. Greenwell's assault claim is denied.

Defendants further contend that Mr. Greenwell cannot assert a claim of battery because the Greenwells cannot establish a City of Jeffersonville officer touched Mr. Greenwell.  The Court has noted above that several law enforcement agencies responded to the events on February 19, 2009, and the SOU team at the Greenwells' home was from Clark County. Moreover, the Greenwells do not respond to Defendants' Motion regarding Mr. Greenwell's battery claim.  Therefore, the Court grants Defendants' Motion for Summary Judgment on this claim.

## IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (Dkt. 34) is **GRANTED in part** and **DENIED in part**.  Specifically, the Motion as to the Greenwells' federal claims against Officer Hubbard in his official capacity and the City of Jeffersonville is **GRANTED**.  The Motion as to the Greenwells' claims for trespass and emotional distress is **GRANTED**.  The Motion as to the Greenwells' claim for battery is **GRANTED**. The Motion as to Mrs. Greenwell's false imprisonment claim is **DENIED**, and the Motion as to Mrs. Greenwell's assault claim is **DENIED**.

SO ORDERED:

Date: _____12/19/2012_____

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jeremy Bart McMahon
jbartmc@mac.com

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP
jlowe@k-glaw.com